**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA**

**Plaintiff,**

**v.**                                                           **Crim. No. 14-466 (GAG)**

**JORGE MERCADO-FLORES,**

**Defendant.**

<u>**OPINION AND ORDER ON MOTION FOR RECONSIDERATION**</u>

On July 17, 2013, a federal grand jury rendered a one-count indictment that charged Defendant Jorge Mercado-Flores with the transportation of a fourteen-year-old female minor <u>within</u> the Commonwealth of Puerto Rico with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).  (<u>See</u> Case No. 13-408 (GAG) at Docket No. 16.)  After extensive plea negotiations, Defendant and the Government entered into a plea agreement whereby Defendant agreed to plead guilty by way of an information to violating 18 U.S.C. § 2421, the transportation of an individual, as opposed to a minor, with the intent to engage in criminal sexual activity.  (<u>See</u> Case No. 14-466 (GAG) at Docket No. 6.)  Both parties agreed that the mandatory minimum of ten years imprisonment of section 2423(a) was excessive given the particular facts of this case.  On July 31, 2014, the court held a change of plea hearing, whereby Defendant filed a waiver of indictment and pled guilty by way of information to 18 U.S.C. § 2421 in criminal case 14-466 (GAG).  (<u>See</u> Docket Nos. 1, 2, 6, and 7.)

Thereafter, on May 11, 2015, the court sentenced Defendant to fifty-seven months imprisonment, based on a violation of 18 U.S.C. § 2421, but reserved judgment on the following jurisdictional matter.  (<u>See id.</u> at Docket No. 39.)  The court questioned whether section 2421

**Civil No. 14-466 (GAG)**

applies to an offense wholly within the Commonwealth of Puerto Rico because unlike section 2423(a), which applies to acts wholly within "any commonwealth, territory or possession of the United States," section 2421 applies only to acts wholly within any "Territory, or Possession of the United States."  <u>Compare</u> 18 U.S.C. § 2421 (transportation generally) with 18 U.S.C. § 2423(a) (transportation of minors).  Accordingly, the court ordered the Government to address this paramount issue of statutory interpretation.  The Government timely filed its brief, arguing that section 2421 does indeed apply to Puerto Rico because despite its commonwealth status, it remains a territory of the United States.  (Docket No. 43.)

Upon reviewing the Government's arguments, interpreting the applicable statutes along with the history of the unique relationship between the United States and the Commonwealth of Puerto Rico, and adhering to binding judicial precedent, the court held that 18 U.S.C. § 2421, which makes it a federal crime to transport any individual with the intent to engage in criminal sexual activity "in interstate or foreign commerce, or in any Territory or Possession of the United States," does not apply to a purely intrastate criminal act committed within the Commonwealth of Puerto Rico.  Accordingly, the court vacated the Judgment at Docket No. 44.

Thereafter, the Government filed a motion for reconsideration of the court's Opinion and Order that vacated Judgment at Docket No. 46, which is now presently before the court.  (<u>See</u> Docket No. 55.)  The Government argues that contrary to the court's conclusion, it is not well-settled law that Puerto Rico is no longer a mere territory and that an examination of the purpose of section 2421 reveals that Congress intended to treat Puerto Rico as a territory for purposes of the statute.  (<u>Id.</u>)

Upon considering the Government's submission and the pertinent law, the court **DENIES** the Government's Motion for Reconsideration at Docket No. 55.

Civil No. 14-466 (GAG)

### I.    Standard of Review

A motion for reconsideration cannot be used as a vehicle to re-litigate matters already litigated and decided by the court.  Villanueva-Mendez v. Vazquez, 360 F. Supp. 2d 320, 322 (D.P.R. 2005).  It is also a long-standing rule that motions for reconsideration cannot be used to bring forth new arguments.  See Nat'l Metal Finishing Co., Inc. v. Barclays Am./Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990) (holding that motions for reconsideration may not be used "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier").  These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law.  See Rivera Surillo & Co. v. Falconer Glass. Indus. Inc., 37 F.3d 25, 29 (1st Cir. 1994).

Accordingly, for a motion for reconsideration to be granted, the court recognizes only three possible grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence not previously available, and (3) the need to correct a clear error of law."  See Torres v. Gonzalez, 980 F. Supp. 2d 143, 147 (D.P.R. 2013).  "In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied."  11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed.) (2012); Rivera v. Meléndez, 291 F.R.D. 21, 23 (D.P.R. 2013) (denying motion for reconsideration when "plaintiff's clear intention is to achieve yet another bite at the apple, and continue this litigation by ignoring and/or refusing this Court's ruling").

### II.    Discussion

The court finds that it need not correct any manifest error of law nor that re-litigation of the same issues already analyzed in its Opinion and Order at Docket No. 46 is warranted.  That being said, the court will briefly address the Government's arguments in order.

**Civil No. 14-466 (GAG)**

      A.    <u>The Increasing Autonomy of Puerto Rico</u>

      The court flatly disagrees with the Government's contention that it is not well-settled law that Puerto Rico is no longer a mere unincorporated territory of the United States <u>for purposes of statutory interpretation</u>.  Without repeating the thorough discussion in its Opinion and Order, the court reiterates that following 1952, the Supreme Court and the First Circuit have consistently recognized the significant change in the degree of autonomy exercised by Puerto Rico in light of the many Congressional actions that transformed the island from a mere territory to that of the unique status of a commonwealth.  (<u>See</u> Docket No. 46 at 4-11.)  In response to this legislative history and in line with the established principle that the question of "[w]hether and how a federal statute applies to Puerto Rico is a question of Congressional intent," <u>Antilles Cement Corp. v. Fortuño</u>, 670 F.3d 310, 320 (1st Cir. 2012), the Supreme Court and courts within the First Circuit have repeatedly held that Puerto Rico constitutes a State for purposes of statutory interpretation and that statutes governing actions wholly within any territory of the United States do not apply to Puerto Rico.  <u>See, e.g.</u>, <u>Calero-Toledo v. Pearson Yacht Leasing Co.</u>, 416 U.S. 663, 670-76, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974) (holding Puerto Rico is considered a state for purposes of the three-judge court statute and noting that before 1952, the statute did not apply to the island); <u>Córdova & Simonpietri Ins. Agency Inc. v. Chase Manhattan Bank N.A.</u>, 649 F.2d 36, 41 (1st Cir. 1981) (holding that intra-territory application of section three of the Sherman Act does not apply to Puerto Rico); <u>Trigo Bros. Packing Corp. v. Davis</u>, 159 F. Supp. 841, 842-43 (D.P.R. 1958), vacated on other grounds sub nom., <u>Davis v. Trigo Bros. Packing Corp.</u>, 266 F.2d 174 (1st Cir. 1959) (holding that Puerto Rico's commonwealth status rendered the language "or commerce within any Territory or the District of Columbia" contained in the Federal Alcohol Administration Act, 27 U.S.C. § 201, inapplicable to intra-commonwealth acts in Puerto Rico); <u>United States v.</u>

**Civil No. 14-466 (GAG)**

1   Figueroa Rios, 140 F. Supp. 376 (D.P.R.1956) (holding that Puerto Rico's commonwealth status

2   rendered the language "or within any Territory or possession or the District of Columbia" referring

3   to the transportation of a firearm in 15 U.S.C. § 901(2) inapplicable to the transportation within the

4   Commonwealth of Puerto Rico of any firearm or ammunition under that Act)..

5           Although the Government argues that the First Circuit's holding in Córdova can only be

6   applied narrowly to cover section three of the Sherman Act, the court finds the analysis and

7   reasoning to be directly applicable to the statute at bar.  After recognizing that "Puerto Rico's

8   status changed from that of a mere territory to the unique status of Commonwealth," the court

9   explained that "[t]he significance of this change from the point of view of the Sherman Act arises

10  out of the fact that, as a general matter, the Sherman Act ceases to apply to purely local affairs

11  once territories become states . . . ." Córdova, 649 F.2d at 41-42.  Therefore, the court stated that

12  there is no discernible reason why the Sherman Act should apply to Puerto Rico differently, given

13  the Congressional intent to grant the island state-like autonomy.  Id. at 42.  Accordingly, the court

14  held that it is fair to assume that the framers of the Sherman Act would have intended that Puerto

15  Rico be treated as a State under the Act had they known about the commonwealth status of the

16  island.  Id.

17          Similar to how the Sherman Act does not apply to purely local affairs of the States, the

18  federal government does not generally impede upon the core police powers of the States that grants

19  them authority to define criminal law and to protect the health, safety, and welfare of their citizens.

20  See McDonald v. City of Chicago, Ill., 561 U.S. 742, 901, 130 S. Ct. 3020, 177 L. Ed. 2d 894

21  (2010).  Therefore, as a general matter, there is an "assumption that the historic police powers of

22  the States were not to be superseded by [a federal act] unless that was the clear and manifest

23  purpose of Congress."  Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 51 L. Ed. 2d

24

Civil No. 14-466 (GAG)

604 (1977).  For mere unincorporated territories of the United States, Congress exercises the full extent of its police powers to implement "its usual policy of extending legislation based on the commerce power to the same substantive acts taking place wholly within the [territory]."  United States v. Beach, 324 U.S. 193, 195, 65 S. Ct. 602, 89 L. Ed. 865 (1945).  Although the limits of the Tenth Amendment do not apply to Puerto Rico, see Franklin California Tax-Free v. Commonwealth of Puerto Rico, __ F.3d __, No. 15-1218, slip op. at 47-48 (1st Cir. June 6, 2015), it logically follows that because Congress granted to Puerto Rico under its constitution significant power to govern its internal affairs, Congress thus limited the extent of the exercise of its powers over areas of local autonomy.  See Córdova, 649 F.2d at 41 ("[T]he federal government's relations with Puerto Rico changed from being bounded merely by the territorial clause . . . to being bounded by the United States and Puerto Rico Constitutions, Public Law 600, the Puerto Rican Federal Relations Act and the rights of the people of Puerto Rico as United States citizens.").

As such, because "Puerto Rico's status changed from that of a mere territory to the unique status of Commonwealth" when it achieved state-like autonomy, Córdova, 649 F.2d at 41, and Congress specifically included the term "commonwealth" in one section of the Mann Act, but not another, the court hence presumed that Congress did not intend for section 2421 to apply to intra-commonwealth acts.  See Examining Board of Engineers, Architects and Surveyors v. Flores de Otero, 426 U.S. 572, 594, 96 S. Ct. 2264, 49 L. Ed. 2d 65 (1976) ("the purpose of Congress in the 1950 and 1952 legislation was to accord to Puerto Rico the degree of autonomy and independence normally associated with a State"); Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002) (holding when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").  Notably, the

Civil No. 14-466 (GAG)

purpose of the Protection of Children from Sexual Predators Act was to prohibit sexual acts against children and Congress made clear that it intended that section 2423(a) apply to wholly intra-commonwealth acts that occur in Puerto Rico.  See Pub. L. No. 105-314, 112 Stat. 2974 (1998); see also Córdova, 649 F.2d at 41-42 ("We believe that there would have to be specific evidence or clear policy reasons embedded in a particular statute to demonstrate a statutory intent to intervene more extensively into the local affairs of post-Constitutional Puerto Rico than into the local affairs of a state.").

Accordingly, in light of the legislative history regarding the creation of the Commonwealth of Puerto Rico, the court simply cannot conceive any other intention for the inclusion of the word "commonwealth" in section 2423(a) other than to include the Commonwealth of Puerto Rico within the jurisdiction of said section of the Mann Act.  Particularly bolstering the court's conclusion in addition to the legislative history is the fact that the case law recognizing such was developed decades before the 1998 amendment of the Mann Act.  See Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 770, 124 S. Ct. 2204, 159 L. Ed. 2d 60 (2004) ("Congress is presumed to be aware of [a] . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").  If Congress wishes to amend section 2421 to include the term commonwealth, then, of course, it may do so.  At this juncture, however, the court is bound by the law to adhere to its conclusion set forth in Docket No. 46.

B.    The Application of Harris v. Rosario and Califano v. Torres

The Government further argues that because the Supreme Court has held post-1952 that Congress continues to exercise plenary power over Puerto Rico via the Territorial Clause, thereby allowing it to treat the island differently from the States so long as there is a rational basis, Puerto Rico remains a mere territory of the United States.  (Docket No. 55 at 15 (citing Harris v. Rosario,

7

Civil No. 14-466 (GAG)

446 U.S. 651, 651-52, 100 S. Ct. 1929 (1980) (per curiam) and <u>Califano v. Torres</u>, 435 U.S. 1, 98 S. Ct. 906, 55 L. Ed. 2d 65 (1978) (per curiam)).  An examination of these two per curiam opinions reveals, however, that the Supreme Court did not hold, or even suggest, that Puerto Rico remains an unincorporated territory <u>for purposes of statutory interpretation</u>.  Indeed, the undersigned acknowledges that the Territorial Clause continues to be the principal source of federal power over non-state areas, which encompasses Puerto Rico because it is not a State of the Union.  <u>See Franklin</u>, __ F.3d __, No. 15-1218, slip op. at 31 (recognizing the plenary powers conferred by the Territorial Clause).  Without said constitutional provision, Puerto Rico could not have become a commonwealth, nor ever be admitted as a State of the Union in the future.

That being said, "[u]nder the compact between the people of Puerto Rico and the United States, Congress cannot amend the Puerto Rico Constitution unilaterally, and the government of Puerto Rico is no longer a federal government agency exercising delegated power."  <u>Quinones</u>, 758 F.2d at 42 (citing <u>Mora v. Mejias</u>, 206 F.2d 377, 386-88 (1st Cir. 1953)).[1]  By arguing that a "[r]eview of the approved Constitution illustrates that there is no reference regarding Puerto Rico's constitutional status as part of the United States," (Docket No. 55 at 10), the Government is simply downplaying the post-1952 status of the island as if its Constitution that was voted upon by its people and approved by Congress was nonetheless a mere federal statute.  By merely focusing on the constitutional status of the island, the Government is comparing apples and oranges.  The court is not disputing that Puerto Rico is <u>constitutionally</u> a territory of the United States; <u>see</u> Docket No. 46 at 4 n.2; rather, it is recognizing that the congressional acts and juridical interpretations of federal laws over the past six decades have shown that Congress recognizes Puerto Rico as a

---

[1] Indeed, Circuit Judge Juan R. Torruella, whose many scholarly dissents and concurrences the Government cites in its brief (<u>see</u> Docket No. 43 at 6-9), recently "reiterated the norm that Puerto Rico has authority to control its internal affairs."  <u>See</u> <u>Franklin California Tax-Free v. Commonwealth of Puerto Rico</u>, __ F.3d __, No. 15-1218, slip op. at 66 (1st Cir. June 6, 2015) (Torruella, J. concurring).

**Civil No. 14-466 (GAG)**

commonwealth as opposed to a mere territory <u>for purposes of statutory interpretation</u>.  By including the term "commonwealth" into the jurisdictional element of a statute, particularly section 2343(a), there could hardly be a clearer intention of said congressional purpose.  Therefore, by amending section 2421 at the same time and not including "commonwealth," it appears that Congress intended to exclude the application of section 2421 to intrastate activities within Puerto Rico.

Accordingly, while the court recognizes that Puerto Rico continues to be governed by the scope of the Territorial Clause, contrary to the Government's contentions, Congress may not legislate as to purely local matters governed by the Puerto Rico Constitution, as binding First Circuit precedent denotes.  For example, taking matters to the preposterous extreme, if the Government's position was indeed the norm, then Congress could again vest upon the President the power to appoint the island's governor and Supreme Court justices—actions that were permissible prior to 1952, or otherwise unilaterally amend the Commonwealth's Constitution.  <u>See</u> <u>Córdova</u>, 649 F.2d at 40 ("prior to 1950, Puerto Rico's legal status was closer to that of a 'territory' than of a 'state.'").  As such, the mere fact that the Commonwealth is still within the ambit of the Territorial Clause does not render it an unincorporated territory <u>for purposes of statutory interpretation</u>.  Rather, the Territorial Clause continues to allow Congress to treat Puerto Rico differently from the States in as much as federal legislation is concerned,[2] but not as to purely local intrastate affairs.

---

[2] As this court has previously pointed out, Congress in fact continues to discriminate against the United States citizens residing in its territories.  <u>See, e.g.</u>, <u>See</u> <u>Franklin</u>, __ F.3d __, No. 15-1218, slip op. at 3 (noting that Chapter 9 of the United States Bankruptcy Code excludes the municipalities of Puerto Rico, including its utilities); <u>Consejo de Salud Playa de Ponce v. Rullan</u>, 586 F. Supp. 2d 22, 25-31 (D.P.R. 2008) (noting that Congress provides much less or no social welfare benefits vis-á-vis those citizens in the States).

Civil No. 14-466 (GAG)

### III.     Conclusion

Upon considering the Government's submission and the pertinent law, the court **DENIES** its Motion for Reconsideration at Docket No. 55.  Despite the Government's prayer for this court to pick and roll past First Circuit precedent and slam dunk in its favor, the court once again emphasizes that it is bound to adhere to binding authority, regardless of whether it agrees with it or not.  Nonetheless, the Government of the United States is highly encouraged to exercise its right of appeal to the Court of Appeals to revisit and challenge the precedent applied by this court, which as noted in the previous Opinion and Order (see Docket No. 46 at 15 & n.8), is contrary to precedent from the Eleventh Circuit, and more recently, the Puerto Rico Supreme Court.

Finally, the undersigned again emphasizes that this opinion and the previous one are based on pure statutory interpretation and judicial precedent.  It is in no way a political determination of the future political status of Puerto Rico.  That is a matter for the local electorate and Congress of the United States.

**SO ORDERED.**

In San Juan, Puerto Rico this 8th day of July, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge